IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

Juwanna Roland,

     Plaintiff,

v.               Case No. 24-cv-2406-JWL

Donnelly College and
Russell Robinson,

     Defendants.

## MEMORANDUM & ORDER

 Plaintiff Juwanna Roland was a nursing student at Donnelly College from the fall of 2021 until March 2023 when she withdrew from the program. Plaintiff filed this lawsuit against Donnelly College (hereinafter "the College") alleging that the College violated Title IX of the Education Amendments Act of 1972 (Title IX), 20 U.S.C. §§ 1681 et seq., and section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Plaintiff further asserts equal protection and due process claims under 42 U.S.C. § 1983 against the College and defendant Russell Robinson as well as a state law claim for tortious interference with a contract against defendant Robinson.

 Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendants move to dismiss all claims except plaintiff's § 1983 claims (doc. 7).[1] As will be explained, the motion is granted in part and denied in part. It is granted with respect to plaintiff's sexual harassment and retaliation claims asserted under Title IX, granted with respect to all plaintiff's Rehabilitation Act claims,

---

[1] In their motion, defendants ask the court to dismiss plaintiff's complaint "in its entirety" for failure to state a claim, but their motion does not address plaintiff's § 1983 claims in any respect. Those claims, then, are not subject to dismissal at this juncture.

and denied with respect to plaintiff's sex discrimination claim under Title IX and plaintiff's tortious interference with contract claim.

## Standard

The court will grant a motion to dismiss for failure to state a claim when a plaintiff's factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *See id*. at 555. The court must accept the facts alleged in the complaint as true, even if doubtful in fact, *see id*., and view all reasonable inferences from those facts in favor of the plaintiff, *see Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). Viewed as such, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## Background

Consistent with the applicable standard, the court accepts as true the following well-pleaded facts alleged in plaintiff's complaint. *See Kenney v. Helix TCS, Inc.,* 939 F.3d 1106, 1109 (10th Cir. 2019). In the fall of 2021, plaintiff Juwanna Roland began attending defendant Donnelly College in Kansas City, Kansas for the purpose of obtaining her LPN degree. During her first year as a student at Donnelly College, plaintiff informed one of her professors (who is not identified by plaintiff) that she experiences testing anxiety especially when she is near other

people and when there are sounds in the environment. Plaintiff alleges that this professor referred to her as "dumb."

Plaintiff also alleges that she was subjected to sexual harassment and sex discrimination during her time as a student at Donnelly College. Each of plaintiff's allegations concerning sexual harassment and sex discrimination concerns defendant Russell Robinson, one of plaintiff's professors. She further asserts her belief that defendant Robinson served on the "Board" for defendant Donnelly College. According to plaintiff, on September 11, 2022, plaintiff's class with defendant Robinson was held at a Waffle House restaurant. Plaintiff arrived before defendant Robinson and sat down in a booth next to other students. When defendant Robinson arrived, he sat next to plaintiff. Plaintiff alleges that defendant Robinson, at one point during the meeting, took his hand and grabbed and squeezed plaintiff's leg and rubbed his hand up and down her leg. Plaintiff alleges that she was uncomfortable and she "flung" defendant Robinson's hand off of her leg. According to plaintiff, defendant Robinson smiled and carried on his conversation with the group. Plaintiff alleges that after the Waffle House incident, she tried to meet with Donnelly College's Director of Nursing, but she refused to meet with plaintiff.[2]

Plaintiff alleges that in October 2022, defendant Robinson commented during plaintiff's class that "if anyone wanted to report him, it would not go well because of his status" with the College. He further stated, according to plaintiff, that he could make complaints against him "go away" just like he could make points on an exam "go away." On another occasion, defendant Robinson allegedly said to plaintiff's class, "If anyone wants to do anything to me, I have guns in

---

[2] Plaintiff does not explain the nature of her effort to meet with the Director of Nursing and she offers no more details on this attempt.

my car." Plaintiff alleges that he then described the specific guns he possessed. Plaintiff alleges that on one specific occasion in October 2022, defendant Robinson walked up to plaintiff during class and rubbed his body on plaintiff's body while standing. Plaintiff moved away from him, extremely upset and uncomfortable. She alleges that on another occasion, defendant Robinson said to the class, "Women don't learn well, and learn better if I piss them off."

On October 31, 2022, plaintiff and other nursing students were assigned to assist with handing out Halloween candy at a community center. During that event, plaintiff was allegedly approached by another professor who said to her, "I see you kept your mouth shut" and walked away laughing. Plaintiff asserts a belief that this comment was a reference to the harassment defendant Robinson was allegedly inflicting upon her. Plaintiff then approached the Director of Nursing and asked her if they could "speak for a moment." Plaintiff alleges that the Director of Nursing ignored plaintiff and walked away. Near the end of the October 31, 2022 event, defendant Robinson sat near plaintiff and asked her how many children she wanted to have. According to plaintiff, the Director of Nursing was "present" for this comment. Plaintiff alleges that this comment made her uncomfortable and that she ignored defendant Robinson.

On November 5, 2022, defendant Robinson allegedly stated to plaintiff's class that he was "looking for a girl from a third-world country who thinks $50,000 per year is a lot of money, that [*sic*] has low self-esteem and daddy issues like Juwanna." According to plaintiff, defendant Robinson laughed in her face after making this comment. He then asked plaintiff if she wanted to come over to his house, told her that he had liquor and that he knew plaintiff likes to drink, and that plaintiff would have to leave before his children woke up. Plaintiff refused this alleged advance. Defendant Robinson then asked plaintiff whether she was sure that she did not want to

come to his house and, when plaintiff refused, he allegedly stated loudly in front of the class that plaintiff was "ugly anyway."  Defendant Robinson then allegedly began passing around a photograph of another professor, stating that plaintiff looked like the professor in the photograph "who is ugly."  According to plaintiff, she told defendant Robinson that he had no business looking at plaintiff or any other student and "if he was looking at her/students in that way, he needed to keep it to himself."  A few minutes later, defendant Robinson approached plaintiff and told her that he did like the way she looks.  He then asked her if she was in a hurry to go home that day so that she could prepare her body for her boyfriend later that night.

On November 8, 2022, plaintiff received a letter from the Director of Nursing stating that plaintiff was not meeting academic standards.  Specifically, the letter stated that plaintiff had failed defendant Robinson's class, despite the fact that the semester was not yet over.  Plaintiff alleges that at the time she received the letter, she was meeting the College's academic standards.  She asserts that defendant Robinson and/or the College altered plaintiff's grades in retaliation for plaintiff objecting to defendant Robinson's sexual harassment of her. Plaintiff alleges that she continued to try to meet with the Director of Nursing, who continued to refuse to meet with her. On or about November 22, 2022, defendant Robinson stated during plaintiff's class that he was going to be a doctor soon and that "some of you need a script . . .yeah, I'll write you a script, Juwanna, for anxiety medication."  He then walked towards her and said, "Yeah, get mad, Juwanna, get mad" as he walked closer and closer to plaintiff until he was right in front of her face.  Plaintiff alleges that in late November 2022 or early December 2022, defendant Robinson stated in front of plaintiff's class, "some women like anal sex, isn't that right, Juwanna?"

On the last day of final exams in December 2022, defendant Robinson required all students to fill out an evaluation of his teaching. He stated that students would not pass the final exam if they did not fill out an evaluation. Plaintiff alleges that defendant Robinson stood close to plaintiff while she filled out the evaluation to ensure that she did not report his harassment. Plaintiff further alleges that, during her final exam, defendant Robinson sat behind plaintiff, leaned forward, and whispered, "You gonna wish you gave me some of that pussy." Defendant Robinson failed plaintiff on her final exam. Plaintiff asserts that she would have passed the exam had defendant Robinson graded it fairly. Defendant Donnelly College then placed plaintiff on academic probation and suspension. She had been scheduled to graduate in December 2022 but had to return to school the next semester because of the failing grade she received.

During the Spring 2023 semester, plaintiff was again assigned to a class taught by defendant Robinson. In early February 2023, defendant Robinson allegedly asked another student in the class whether that student thought that plaintiff has "hair like wool." In March 2023, defendant Robinson approached plaintiff during class, grabbed a beverage that was sitting in front of her while smirking and almost touching her breast, stating "Let me throw this away for you." Throughout that semester, defendant Robinson stood close enough to plaintiff during exams that his leg would touch the leg of plaintiff's chair. On one occasion during that semester, defendant Robinson made the comment to plaintiff that "some people are really scandalous" while rolling his eyes at plaintiff.

Plaintiff alleges that during the spring semester, other professors began treating plaintiff differently and more negatively. She alleges that her grades were altered. On March 22, 2023, plaintiff was forced to withdraw from the College due to the discrimination, harassment and

6

retaliation she experienced.  Plaintiff alleges that the College did not return plaintiff's tuition and that her graduation and nursing career were delayed.

**Title IX Claims**

In Count I of her complaint, plaintiff alleges that the College placed her on academic suspension, delayed her graduation date, and ultimately forced her to withdraw from the nursing program based on her sex in violation of Title IX. Title IX prohibits educational institutions that receive federal assistance from discriminating on the basis of sex. 20 U.S.C. § 1681(a) (1990). Title IX states:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any education program or activity receiving Federal financial assistance....

*Id*. To state a cause of action under Title IX, plaintiff must show that was she was excluded from participation in, denied the benefits of, or subjected to discrimination in an educational program; (2) that the program receives federal assistance; and (3) that the exclusion from the program was on the basis of sex. *Seamons v. Snow*, 84 F.3d 1226, 1232 (10th Cir 1996).

In support of its motion to dismiss, the College argues primarily that plaintiff has failed to state a sex discrimination claim because she has not identified any male students who were treated more favorable than her.  But in making this argument, the College directs the court to cases involving the "selective enforcement" theory of liability under Title IX.  By way of background, some Circuit Courts of Appeal have recognized two distinct analytical tests for university discipline cases under Title IX. *See French v. Denver Pub. Sch*., 2024 WL 3276159, at *14–15 (D. Colo. July 2, 2024) (collecting cases).  Under the "erroneous outcome" test, a

plaintiff must set forth (1) "facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding" and (2) "a particularized allegation relating to a causal connection between the flawed outcome and gender bias." *Id*. at *14 (quoting *Yusuf v. Vassar Coll*., 35 F.3d 709, 715 (2d Cir. 1994)). To satisfy the "selective enforcement" test, a plaintiff "must show that a similarly situated member of the opposite sex was treated more favorably than the plaintiff due to his or her gender." *Id*. (quoting *Doe v. Univ. of Dayton*, 766 Fed. Appx. 275, 284 (6th Cir. 2019)).

As the district court explained in *French*, however, the Tenth Circuit has "declined to superimpose these analytical tests onto Title IX" because "[a]ll of these categories simply describe ways in which a plaintiff might show that sex was a motivating factor in a university's decision to discipline a student." *Id*. at *15 (quoting *Doe v. Univ. of Denver*, 1 F.4th 822, 830 (10th Cir. 2021) (quoting *Doe v. Purdue Univ*., 928 F.3d 652, 667 (7th Cir. 2019), and collecting cases)). Thus, while "[a]llegations of an erroneous outcome or selective enforcement are means by which a plaintiff might show that sex was a motivating factor in a school's disciplinary decision," *see id*. (quoting *Doe*, 1 F.4th at 830), those theories are not the exclusive ways to establish a claim of sex discrimination under Title IX. Rather, the court simply asks whether the facts alleged, if true, raise a plausible inference that the College discriminated against plaintiff on the basis of sex? *See id*. (quoting *Doe*, 1 F.4th at 830 (quoting *Doe*, 928 F.3d at 667-87)).  For purposes of plaintiff's complaint here, then, the fact that she has not identified male students who were treated more favorably than her is simply not relevant at this stage of the proceeding, particularly when it is not at all clear that plaintiff intends to pursue a "selective enforcement" theory of liability.  The court, then, rejects this argument for dismissal.

The College also contends that "the only plausible inference" from the facts alleged by plaintiff is that plaintiff struggled to meet the College's academic standards and made her own decision to withdraw. This is plainly not the only plausible inference from the allegations in the complaint. Plaintiff has specifically pleaded that defendant Robinson told her during her final exam, "You gonna wish you gave me some of that pussy," and then failed her on the exam—an exam she alleges that she would have passed if it had been graded fairly and not based on her refusal of his sexual advances. According to plaintiff, as a result of that failing grade, the College placed plaintiff on academic probation, and plaintiff was ultimately forced to withdraw from the program. These allegations, together with the numerous allegations concerning defendant Robinson's sex-based comments made directly to plaintiff, plausibly suggest that defendant Robinson altered plaintiff's grades based on sex.

The only other argument advanced by the College is that plaintiff alleges a "pattern and practice of discrimination based on sex" but fails to allege a specific policy or fact that suggests that the College had a history of "engaging in a pattern of selective enforcement of its academic policy or disparate treatment against female students." Again, because the court does not read plaintiff's complaint as asserting a selective enforcement theory of liability (and, in any event, plaintiff is clearly not attempting to assert a pattern-and-practice claim in her individual lawsuit), the court rejects this argument. Because the College does not advance any other arguments as to why this claim should be dismissed, the motion is denied.[3]

---

[3] The College can only be liable under Title IX for its own intentional misconduct. *Davis ex rel. Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 640-41 (1999) (to be held liable under Title IX, the funding recipient itself must have, based on sex, acted to exclude a person's participation in, deny a person the benefits of, or subject a person to discrimination under

*Retaliation under Title IX*

Plaintiff alleges in Count II of her complaint that the College retaliated against her for "reporting/attempting to report discrimination and harassment" by placing plaintiff on academic probation, delaying her graduation date, and forcing her to withdraw from the program.  Title IX "prohibits retaliation against individuals because they have complained of sex discrimination." *Hiatt v. Colorado Seminary*, 858 F.3d 1307, 1315 (10th Cir. 2017).  Thus, to state a claim for retaliation under Title IX, a plaintiff must allege that the defendant "retaliated against [her] *because* [s]he complained of sex discrimination." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 184 (2005).  This generally means that a plaintiff must plausibly allege that (1) she engaged in protected activity; (2) the defendant had knowledge of the protected activity; (3) materially adverse school-related action was taken against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse action. *Lask v. Kansas City Kansas Community Coll., Bd. of Trustees*, 2022 WL 22893684, at *3 (D. Kan. Jan. 19, 2022) (citing *Tackett v. Univ. of Kan.*, 234 F. Supp. 3d 1100, 1108 (D. Kan. 2017)).  The College moves to dismiss this claim on the grounds that plaintiff has not plausibly alleged that she engaged in protected activity or, even assuming that she did, that any College official had knowledge that plaintiff had engaged in protected activity.  The court agrees.

Plaintiff's complaint is devoid of any allegations that anyone in the decision-making process with respect to placing plaintiff on probation, delaying her graduation date, or forcing her

---

an education program or activity that receives federal financial assistance). Because the College does not address this issue in its motion to dismiss, the court need not reach this issue at this juncture.

to withdraw from the program had any knowledge of any protected activity. In her opposition to the motion to dismiss, plaintiff contends only that she engaged in protected activity when she "sought" to meet with the Director of Nursing regarding defendant Robinson's alleged discrimination and harassment. According to plaintiff, "it can be reasonably inferred from the Director's repeated refusal to meet with Plaintiff that Defendant Donnelly knew of the protected activity." Plaintiff has not cited—and the court cannot find—any case law supporting this inferential leap. In fact, plaintiff's argument "conflates an attempt at opposition with actual opposition." *See McCallum v. Mayorkas*, 2023 WL 3203011, at *14 (D.D.C. May 2, 2023) (dismissal of retaliation claim appropriate where the plaintiff alleged that she tried to schedule a meeting to discuss discrimination but meeting never occurred); *accord Alley v. Penguin Random House*, 62 F.4th 358, 362 (7th Cir. 2023) (plaintiff did not engage in protected activity when she attempted to report conduct by calling ombudsperson, but her call went unanswered and she never actually spoke with anyone; instead of actually reporting harassment, she failed to report harassment, which is not a protected activity).

Because plaintiff has not alleged that anyone with authority to make the decisions that she challenges had any knowledge of any protected activity, plaintiff's retaliation claim must be dismissed. *See Peterson v. Utah Dep't of Corrs.*, 301 F.3d 1182, 1188-89 (10th Cir. 2002) (an entity's alleged adverse action against an individual cannot be because of that individual's protected conduct unless the entity knows the individual has engaged in the protected activity); *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993) (plaintiff must show that the individual who took adverse action against her knew of the plaintiff's protected activity).

11

*Sexual Harassment under Title IX*

Plaintiff alleges in Count III of her complaint that the College is liable to her under Title IX for defendant Robinson's sexual harassment of her. "[A] recipient of federal education funds may be liable in damages under Title IX where it is deliberately indifferent to known acts of sexual harassment by a teacher." *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 641 (1999) (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998)). A plaintiff alleging teacher-on-student sexual harassment must show that the defendant "(1) had actual knowledge of, and (2) was deliberately indifferent to (3) harassment that was so severe, pervasive and objectively offensive that it (4) deprived the victim of access to the educational benefits or opportunities provided by the school." *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1246 (10th Cir. 1999) (applying this test to student-on-student discrimination); *see also Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1152 (10th Cir. 2006) (applying this test to teacher-on-student discrimination).

The College moves to dismiss this claim on the grounds that it lacked actual knowledge of any harassment by defendant Robinson. In support of her argument that she has plausibly alleged actual knowledge of defendant Robinson's sexual harassment, plaintiff again relies on her attempts to report the harassment to the Director of Nursing. Plaintiff reiterates her argument that the fact that the Director of Nursing "repeatedly and overtly ignored plaintiff's attempts to meet with her" suggests that she "knew what plaintiff was going to tell her and did not want to hear it." Plaintiff directs the court to no authority suggesting that her attempts to report sexual harassment might satisfy *Gebser*'s actual knowledge requirement. In the absence of any allegation that an

appropriate person actually received a report of defendant Robinson's sexual harassment, plaintiff cannot state a plausible claim for sexual harassment under Title IX.[4]

In her opposition to the motion, plaintiff also asserts that she has plausibly alleged actual knowledge in light of her allegation that, on October 31, 2022, an unidentified professor said to plaintiff, "I see you kept your mouth shut." According to plaintiff, this alleged comment suggests that defendant Robinson's conduct "was widely known."  But plaintiff's complaint is devoid of any specific allegations suggesting that this professor witnessed any of defendant Robinson's conduct or had any other reason to know about defendant Robinson's conduct.  There is nothing in the complaint or in plaintiff's brief that sheds any light on what it was that plaintiff had kept her "mouth shut" about.  And even if this unidentified professor had heard about defendant Robinson's harassment of plaintiff, there is no indication that he heard about that conduct from someone whose knowledge was sufficient to hold the College liable for the harassment.   For example, if this professor had heard about defendant Robinson's conduct from defendant Robinson himself, that would not make the conduct "widely known" to an "appropriate person" for purposes of *Gebser*'s actual knowledge requirement.  In the absence of any allegations supporting the idea that this professor knew about defendant Robinson's conduct, plaintiff can only speculate that the professor's statement concerned plaintiff's decision to remain silent in the

---

[4] While plaintiff alleges in her complaint that the Director of Nursing was present for an isolated question from defendant Robinson about how many children plaintiff wanted to have, plaintiff does not suggest that this one comment (which, on its face and without additional context from plaintiff, appears to be inappropriate but relatively innocuous) was sufficient to put the Director of Nursing on actual notice of the sexual harassment that plaintiff was allegedly experiencing. And while plaintiff also alleges that many comments occurred in the classroom, she does not allege that other students ever complained to anyone with authority about defendant Robinson's comments or conduct such that the College might otherwise have knowledge of his conduct.

face of defendant Robinson's alleged harassment.[5]   Dismissal of plaintiff's sexual harassment claim is required.

**Rehabilitation Act Claims**

Section 504 of the Rehabilitation Act states: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).   Because the Rehabilitation Act incorporates the standards applied under the ADA, ADA case law is equally applicable to claims brought under the Rehabilitation Act and vice versa. *Hampton v. Utah Dep't of Corr.*, 87 F.4th 1183, 1190 n.13 (10th Cir. 2023); *see* 29 U.S.C. § 791(f).   Nonetheless, the Tenth Circuit has recognized a key distinction between the two statutes—the ADA merely requires the plaintiff's disability be a but-for cause (*i.e.*, "by reason of") of the discrimination, rather than its sole cause as required by the Rehabilitation Act.  *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1313 (10th Cir. 2021).

---

[5] To the extent plaintiff complained to defendant Robinson about his alleged harassment of her, this report is insufficient to satisfy the actual knowledge requirement.  *M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 127 (3d Cir. 2020) ("Two implications flow from *Gebser*. First, a perpetrator's knowledge of his own Title IX discrimination does not satisfy *Gebser*'s actual-knowledge requirement even if the perpetrator would otherwise be an appropriate person. And second, any report to a perpetrator—even if the perpetrator would otherwise be an appropriate person—will not satisfy *Gebser*. To the contrary, for a school district to have actual knowledge, a report must be made to an appropriate person who is not the perpetrator.").  Moreover, while plaintiff alleges in paragraph 93 of her complaint that "[u]pon information and belief, Defendant College had knowledge of past sexual harassment of students Defendant Robinson had engaged in," she provides no context for this conclusory allegation and she does not advance this argument in her brief.  *See Escue*, 450 F.3d at 1153 (interpreting *Gebser* implicitly deciding that harassment of persons other than the plaintiff may provide the school with the requisite notice to impose liability under Title IX).

Plaintiff asserts in Count VI of her complaint that the College discriminated against her on the basis of an actual and perceived disability—her anxiety. She fleshes out this claim somewhat in her brief, explaining that defendant Robinson "openly taunted" plaintiff about her anxiety in front of the class, then failed plaintiff on her exam. From this, plaintiff draws the inference that she was prevented from passing the program based on her disability. The College moves to dismiss plaintiff's disability discrimination claim on the grounds that plaintiff has not plausibly pleaded that she was prevented from passing the program "solely" because of her disability. The court agrees. Throughout her complaint, plaintiff alleges that defendant Robinson altered her exam grades not based on any perceived disability but in retribution for plaintiff's response to defendant Robinson's alleged sexual advances. For example, plaintiff alleges in paragraph 60 of her complaint that the College and defendant Robinson "altered plaintiff's grades in retaliation for her objecting to the sexual harassment she was experiencing." Moreover, plaintiff alleges that the College informed her that she was not meeting academic standards on November 8, 2022—at least two weeks prior to the single comment made by defendant Robinson about plaintiff's anxiety. Plaintiff's allegations, then, reveal that her alleged disability—actual or perceived—simply could not have been the sole cause of any decision or conduct by the College that allegedly prevented plaintiff from passing the program. In fact, plaintiff's allegations wholly undermine any suggestion that her perceived or actual disability played any part whatsoever in any decision made by the College concerning academic probation, a delay in graduation, or forcing plaintiff to withdraw from the program. Plaintiff simply fails to allege any link between her perceived or actual disability and any adverse action that she experienced as a student. Because

plaintiff's allegations do not permit her to plausibly plead the causation element of her disability discrimination claim, this claim is dismissed.

In Count VII of her complaint, plaintiff alleges that the College retaliated against her in violation of the Rehabilitation Act. While the Rehabilitation Act does not contain an express anti-retaliation provision, the Tenth Circuit has imported the anti-retaliation provision from the Americans with Disabilities Act. *Peterson v. Univ. of Utah*, 2024 WL 3850012, at *5 n.40 (D. Utah Aug. 16, 2024) (citing *Jarvis v. Potter*, 500 F.3d 1113, 1125 (10th Cir. 2007)). To state a retaliation claim for purposes of the Rehabilitation Act, plaintiff must plead facts plausibly demonstrating "(1) that [she] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Brown v. Austin*, 13 F.4th 1079, 1090 (10th Cir. 2021) (quoting *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1051 (10th Cir. 2011)). The College moves to dismiss this claim on the grounds that plaintiff has not plausibly alleged that she engaged in protected opposition to disability discrimination or, even assuming that she did, that any College official had knowledge that plaintiff had engaged in protected opposition to disability discrimination. The court agrees.

In response to the College's arguments, plaintiff contends that she has pleaded facts that plausibly support that she engaged in protected activity. Plaintiff directs the court to paragraphs 32, 42-43 and 62 of her complaint to support her argument that "she sought to meet with Defendant Donnelly's Director of Nursing regarding Defendant Robinson's discrimination." For the reasons set forth above in connection with her Title IX retaliation claim, plaintiff's attempt to report discrimination does not constitute protected activity. Moreover, without exception, each of the

16

paragraphs cited by plaintiff addresses her attempts to report defendant Robinson's alleged sexual harassment of her. Complaints of sexual harassment are not protected under the Rehabilitation Act. And although plaintiff need not specifically invoke the Rehabilitation Act or any particular words to constitute protected opposition, a report must convey concern about conduct made unlawful by the Rehabilitation Act. *See Hinds v. Sprint/United Management Co*., 523 F.3d 1187, 1203 (10th Cir. 2008); 42 U.S.C. § 12203(a) ("No person shall discriminate against any individual because such individual has *opposed any act or practice made unlawful by this chapter* or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.") (emphasis added); *see also Anderson v. Academy Sch. Dist. 20*, 2004 WL 2757938, at *3 (10th Cir. Dec. 3, 2004) (filing of grievance was not protected activity for purposes of Title VII retaliation claim where subject of grievance failed to include allegation of mistreatment motivated by any category protected by Title VII; thus, even if supervisor retaliated against plaintiff for filing grievance, that retaliation was not unlawful under Title VII).

According to the allegations in plaintiff's complaint, defendant Robinson made the comment about plaintiff needing anxiety medication in November 2022. Nowhere does plaintiff allege that she reported this comment or attempted to report any conduct on the part of defendant Robinson concerning plaintiff's anxiety. Moreover, plaintiff does not address the College's argument that no facts plausibly support an inference that the College knew that plaintiff had engaged in any protected activity related to her anxiety. While plaintiff alleges that she informed one professor in the fall of 2021 that she experienced testing anxiety in certain situations, she does not allege that she requested an accommodation for her testing anxiety or that she had any issues

17

related to her anxiety in the class where she reported the testing anxiety. In fact, plaintiff mentions her anxiety as it relates to her experience as a student at the College in only two paragraphs of the 248 paragraphs in her complaint. *See* ¶ 10 (plaintiff informed one professor in the fall of 2021 that she experiences testing anxiety when she is near other people and when there are sounds in the environment) and ¶ 63 (Defendant Robinson in November 2022 said that he would write Plaintiff a prescription for anxiety medication). Nothing in plaintiff's complaint supports a plausible inference that plaintiff engaged in protected activity under the Rehabilitation Act or that the College had any knowledge of her doing so. In short, because plaintiff has not plausibly alleged facts suggesting that she engaged in protected opposition to disability discrimination, she fails to state a claim for retaliation under the Rehabilitation Act.

In Count VIII of her complaint, plaintiff asserts a claim against the College for failure to accommodate her disability in violation of the Rehabilitation Act. To succeed on a claim of failure to accommodate under the Rehabilitation Act, plaintiff must prove that she (1) was disabled; (2) was "otherwise qualified"; and (3) requested a plausibly reasonable accommodation. *Brown v. Austin*, 13 F.4th 1079, 1084–85 (10th Cir. 2021). The College moves to dismiss this claim because plaintiff has pleaded no facts plausibly suggesting that she requested an accommodation for her anxiety. Again, the court agrees.

Plaintiff asserts that she requested an accommodation when "during her first year, she informed one of her professors that she experiences testing anxiety, especially when she is near other people and when there are sounds in the environment." According to plaintiff, her statement to that unidentified professor was sufficient to inform the College of her desire for an accommodation. Plaintiff, however, does not allege that the "professor" she informed had

18

authority to make determinations about accommodations on behalf of the College. *See Carney v. Univ. of Akron,* 2016 WL 4036726, at *16 (N.D. Ohio July 28, 2016) (allegation that plaintiff reported anxiety to a professor during first year of law school "does not come close" to satisfying requirement that plaintiff present diagnosis and request for accommodation to an official at the University) (citing *Kaltenberg v. Ohio College of Podiatric Medicine*, 162 F.3d 432, 437 (6th Cir. 1998) ("That plaintiff told an academic counselor at the College that she thought she might have adult attention deficit disorder simply did not impose an obligation to offer accommodations.")). She also does not allege that the professor had any obligation to disclose plaintiff's statement about testing anxiety to any official at the College.

At a minimum, a request for accommodation "must make clear that the [student] wants assistance for his or her disability." *Foster v. Mountain Coal Co*., LLC, 830 F.3d 1178, 1188 (10th Cir. 2016) (quotation omitted). While a request for an accommodation may not be required when a disabled person's needs are obvious, *see Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1197 (10th Cir. 2007), plaintiff here does not allege that any needs she had were obvious. Plaintiff alleges only that she told one professor during her first semester that she experiences testing anxiety in certain situations. No other context is provided by plaintiff. Plaintiff's isolated statement, devoid of any request for accommodations, simply cannot support a failure-to-accommodate claim against the College. *See West-Helmle v. Univ. of Denver*, 2024 WL 3759397, at *4 (D. Colo. Aug. 12, 2024) (student's email to professor stating that he "had ADHD" did not amount to request for accommodation); *see also Cunningham v. Wichita State Univ.*, 613 Fed. Appx. 758, 759-60 (10th Cir. 2015) (affirming 12(b)(6) dismissal of failure-to-accommodate claim where University could not accommodate a disability that it did not know

about and student's disclosure of ADD on required intake forms did not suggest obvious need for accommodation). This claim is dismissed.

**Tortious Interference with Contract**

Lastly, plaintiff asserts a claim against defendant Robinson for tortious interference with a contract. The essential elements of a claim for tortious interference with contract are: (1) the contract; (2) the wrongdoer's knowledge thereof; (3) his or her intentional procurement of its breach; (4) the absence of justification; and (5) damages resulting therefrom. *See Burcham v. Unison Bancorp, Inc.*, 276 Kan. 393, 423 (2003). In support of his motion for dismissal, defendant Robinson argues that plaintiff has not alleged the existence of an enforceable contract; that plaintiff has not alleged that he acted with malice; and that he cannot be liable because he is an agent of the College. As will be explained, the court rejects each of these arguments and concludes that discovery is required on this claim.

Defendant Robinson contends that plaintiff has identified no enforceable contract between the College and plaintiff. But taken as a whole, the complaint plausibly describes a contractual relationship whereby plaintiff paid tuition and enrolled in the College's nursing program and the College, in turn, agreed to provide her with educational services and educational opportunity. *See Southwell v. Univ. of Incarnate Word*, 974 S. W. 2d 351, 356 (Tex. App. 1998) ("[W]here a private college or university impliedly agrees to provide educational opportunity and confer the appropriate degree in consideration for a student's agreement to successfully complete degree requirements, abide by university guidelines, and pay tuition, a contract exists."). Nothing more is required at this early stage.

Defendant Robinson next argues that plaintiff's tortious interference claim fails because plaintiff has not alleged that he acted maliciously. In making this argument, defendant relies on the Kansas Supreme Court's decision in *Turner v. Halliburton Corporation*, 240 Kan. 1 (1986). In that case, the Court discussed the interplay between malice and claims for tortious interference with contract and prospective business expectancy. *Id.* at 13-14.  Despite this discussion, however, more recent Kansas opinions have not listed malice as an element essential to a claim for tortious interference with contract or tortious interference with business expectancy. *See Cohen v. Battaglia*, 296 Kan. 542, 546 (2013); *Burcham*, 276 Kan. 393, 423, 425.  Furthermore, the Kansas Supreme Court made the following statement in *Turner*, which was later discussed in *Burcham*: "'The term "justification" has been said not to be susceptible of any precise definition. It is employed to denote the presence of exceptional circumstances which show that no tort has been in fact committed and to connote lawful excuse which excludes actual or legal malice.'" *Burcham*, 276 Kan. at 425 (citing *Turner*, 240 Kan. at 12–13). With this passage, the Kansas Supreme Court shows that malice is interwoven with the notion of justification, or the lack thereof.  In other words, the concept of legal malice and justification is evident from the "absence of justification" requirement of a tortious interference with contract claim. And plaintiff here has clearly alleged in her complaint that defendant Robinson altered her grades without justification—that he did so to punish her for rejecting his alleged advances and for objecting to his alleged harassment of her. The court, then, deems these allegations sufficient to survive this aspect of the motion to dismiss.

Defendant Robinson also suggests that dismissal is required because he, as an agent of the College, cannot be liable for tortiously interfering with a contract between the College and plaintiff. *See Diederich v. Yarnevich*, 40 Kan. App. 2d 801, 809-10 (2008) (A corporate agent,

acting within scope of his or her employment, cannot be held liable for tortious interference with a contract to which the corporation is a party, because the agent is not a third party to the contract.). But plaintiff's complaint alleges that defendant Robinson, in altering plaintiff's grades in retribution for opposing sexual harassment, was not acting in the interest of the College or within the scope of his employment with the College. Plaintiff's allegations, then, are sufficient to proceed with discovery on this claim.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' motion to dismiss for failure to state a claim (doc. 7) is granted in part and denied in part.

**IT IS SO ORDERED.**

Dated this 20th day of February, 2025, at Kansas City, Kansas.

_____s/John W. Lungstrum_____
HON. JOHN W. LUNGSTRUM
United States District Judge